UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FUTABA INDUSTRIAL CO., LTD,

       Plaintiff,

v.                                                  Case No. 11-11873
                                                   Honorable Patrick J. Duggan

KEYLEX CORPORATION,

       Defendant.
_____/

**<u>OPINION AND ORDER (1) DENYING DEFENDANT'S SECOND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM; AND (2) DENYING AS MOOT PLAINTIFF'S MOTION IN THE ALTERNATIVE FOR JURISDICTIONAL DISCOVERY</u>**

Plaintiff Futaba Industrial Company, Limited ("Futaba") initiated this action against Defendant Keylex Corporation ("Keylex") on April 28, 2011. Futaba filed an amended complaint against Keylex on November 2, 2011, alleging one count of patent infringement in violation of the United States patent laws. Presently before the Court is Keylex's second motion to dismiss the action for lack of personal jurisdiction and for failure to state a claim, filed pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6) on November 21, 2011. In the event the Court is inclined to grant Keylex's motion, Futaba seeks jurisdictional discovery. The motions have been fully briefed.[1] On January

---

[1] Before Futaba filed its amended complaint, Keylex filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim. In response, Futaba filed its motion for jurisdictional discovery. When Futaba filed its amended complaint, Keylex informed the Court that its motion to dismiss <u>and</u> Futaba's motion for discovery were moot. Futaba disagrees with respect to its motion and asks the Court to rule on it.

                                                                                                      (continued...)

13, 2012, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to the pending motions pursuant to Eastern District of Michigan Local Rule 7.1(f).

**I.     Factual Background**[2]

Futaba is a Japanese corporation with its principal place of business in Japan. Futaba manufactures automobile parts, including fuel system parts for vehicle manufacturers worldwide. Futaba is the owner of United States Patent No. 6,615,489 ("489 Patent"), entitled "Method of Manufacturing a Fuel Inlet" and issued September 9, 2003.

Keylex also is a Japanese corporation with its principal place of business in Japan. Keylex manufactures fuel system parts for automobiles, including fuel inlets that Futaba claims are made by a process covered by one or more claims of the '489 Patent. Keylex also manufactures stamping dies, among other products. (Doc. 24 Ex. PX7.) Keylex sells its fuel system parts, including the alleged infringing fuel inlets to vehicle manufacturers

---

[1](...continued)
Keylex, however, has filed only a one-page "response" to Futaba's motion for jurisdictional discovery, which fails to address the substantive arguments in Futaba's motion because Keylex believes the motion is moot (as Keylex argues in the pleading). Were the Court inclined to grant Futaba's motion for discovery, it would have allowed Keylex to supplement its response. For the reasons discussed *infra*, however, the Court finds it unnecessary for Keylex to do so.

[2]The following facts are predicated on those set forth in Futaba's amended complaint and its response to Keylex's motion to dismiss which, based on the applicable standards set forth *infra*, the Court is viewing as true and in a light most favorable to Futaba.

in Japan, including Mazda Motor Corporation. The vehicle manufacturers mount Keylex's alleged infringing fuel inlets on motor vehicles that the manufacturers import into the United States. The vehicle manufacturers also import the alleged infringing fuel inlets into the United States for use as spare or replacement parts. Futaba has identified at least one alleged infringing fuel inlet being sold as a replacement part at a Mazda dealership within the Eastern District of Michigan. (Doc. 24 Ex. B.)

Futaba claims that Keylex has sold the alleged infringing fuel inlets since at least July 2009. (Am. Compl. ¶ 11.) Futaba further claims that Keylex is aware that the fuel inlets are imported, offered for sale, sold and/or used in the United States, relying upon Keylex's express acknowledgment that it designs the fuel inlets to U.S. regulations for U.S. model vehicles. (*Id.* ¶¶13, 15.) According to Futaba, on April 20, 2009, "Keylex contacted Futaba by telephone and email informing Futaba that Keylex might infringe the '489 Patent." (*Id.* ¶ 14.) Keylex additionally advised Futaba on September 1, 2011, that Keylex intended to continue selling its fuel inlets for at least one year. (*Id.*)

Keylex is not listed on any United States stock exchange and is not registered to do business with any Secretary of State in the United States. (Doc. 19 Ex. B ¶ 9.) Keylex has no registered agents, offices, telephone listings, mailing addresses, or bank accounts anywhere in the United States. (*Id.*)

Keylex, however, is the parent corporation of wholly-owned subsidiary World Auto-Dies America Corporation ("WADAC"), which is a Michigan corporation with its principal place of business in Novi, Michigan. (Doc. 24 Ex. PX2; *see also*

3

http://www.dleg.state.mi.us.) WADAC's primary business is selling die stamps and welding cells. (Doc. 19 Ex. C ¶ 3.) Yasuhiro Seto, Keylex's President, also is the President of WADAC. (Doc. 24 Ex. PX10.) Toshiaki Sasagawa, a former Keylex employee, is WADAC's Vice-President, Secretary, and Treasurer. (*Id*.) These two individuals comprise WADAC's board of directors.

Keylex maintains that WADAC operates independently and with a separate corporate identity from Keylex. (Doc. 19 Ex. B ¶ 10, Ex. C. ¶¶ 5-6.) However on Keylex's website, its President, Mr. Seto, discusses WADAC and another subsidiary located in China in this way:

> After pursuing the best way to produce parts with optimized lead time and cost, as well as high quality, we are now looking [at] ways to expand our business globally. We have already established our business branches in China and the USA, which enable us to explore new business opportunities.

(Doc. 24 Ex. PX1.)

WADAC purchases products from Keylex that Keylex ships to WADAC in Michigan. Based on its search of Panjiva, an online database of shipping information, including U.S. customs data, Futaba establishes the following shipments of goods from Keylex to WADAC since 2007:

4

| Date of Shipment | Weight of Shipment (in pounds) |
|---|---|
| 8/11/2007 | 135,760 |
| 8/17/2007 | 23,699 |
| 10/12/2007 | 13,360 |
| 11/4/2007 | 5,952 |
| 6/6/2008 | 59,855 |
| 6/14/2008 | 38,140 |
| 6/17/2008 | 54,013 |
| 6/18/2008 | 3,086 |
| 8/16/2009 | 200,642 |
| 2/23/2010 | 9,259 |
| 2/27/2010 | 78,295 |

(Doc. 24 Ex. PX14.) These shipments were comprised of stamping dies and welding cells. (Doc. 19 Ex. B ¶ 16.) According to Keylex, its sales to WADAC account for less than about .4% of Keylex's total annual revenue. (*Id*.) Using Keylex's annual total revenue of $49 billion Yen or about $630 million, as reported on its website, the company derives approximately $2.5 million annually from its sales to WADAC. (Doc. 24 Ex. PX4.)

The shipping records also reflect Keylex's shipment of product totaling 13,646 pounds to Lenawee Stamping Corporation in Tecumseh, Michigan, on February 13, 2011. (Doc. 24 Ex. PX14.) The commodity is described as "[p]arts for electric laser ultrasonic hot spray ing [sic] metal machine." (*Id*.) Keylex previously was a partial owner of

5

Lenawee Stamping Corporation– an ownership interest it acquired when two companies merged to form Keylex. (Doc. 19 Ex. B ¶ 14.) Keylex claims, however, that it sold its interest in this Michigan corporation in February 2006. (*Id.*)

## II. Personal Jurisdiction- Applicable Law and Analysis

Federal Rule of Civil Procedure 4(k)(2) provides that, for a claim arising under federal law, "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Michigan's long-arm statute authorizes the exercise of jurisdiction over a nonresident to the fullest extent authorized under the United States Constitution. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992). The exercise of jurisdiction is authorized or consistent with the Constitution if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (internal quotation marks and citation omitted).

Supreme Court opinions following *International Shoe* have differentiated between general jurisdiction and specific jurisdiction in assessing whether the defendant's contacts with the forum are sufficient to satisfy due process. Only the former is at issue in the present matter at this time, as Futaba appears to concede that it lacks evidence without conducting jurisdictional discovery to demonstrate specific jurisdiction over Keylex. (*See*

6

Doc. 24 n.6.)  "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[3] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, – U.S. – , 131 S. Ct. 2846, 2851 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317, 66 S. Ct. at 159).  "Neither the United States Supreme Court nor [the United States Court of Appeals for the Federal Circuit Court]"– whose decisions apply to this case– "has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic."  *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  A reviewing court must consider the facts of each case and look at the defendant's cumulative contacts with the forum.  *Id*.

The plaintiff bears the burden of establishing that personal jurisdiction exists.  *See, e.g., Michigan Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1999).  The plaintiff must make this showing by a preponderance of the evidence, unless the court rules on the Rule 12(b)(2) motion without conducting an evidentiary hearing.  *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n. 3 (6th Cir. 2006).  When a court declines to hold an evidentiary hearing, the plaintiff need only make a *prima facie* showing that jurisdiction exists.  *Id*. (citations omitted); *see also Autogenomics, Inc. v.*

---

[3]In comparison, specific jurisdiction arises "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum." *See Helicopteros Nationales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984).

*Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). Further, where there is no evidentiary hearing conducted, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff and must not weigh the controverting assertions of the party seeking dismissal. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (1998). Applying these standards, this Court concludes that Futaba makes a *prima facie* showing that Keylex has sufficient minimum contacts with the forum to warrant the assertion of general personal jurisdiction over it.

Looking only at the last five years, Keylex has sold and shipped millions of dollars of goods *annually* to Michigan corporations. In some years, Keylex made multiple shipments into the forum. In addition, Keylex's wholly-owned subsidiary, WADAC, is located in the forum and Keylex previously owned (albeit through "inheritance") another entity in the forum, Lenawee Stamping Corporation.

Undoubtedly, the activities of a subsidiary in the forum cannot establish the sufficient contacts with the forum to assert personal jurisdiction over the parent corporation. *See Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279, 283 (6th Cir. 1990) (Stating that "[w]hen formal separation is maintained between a corporate parent and its corporate subsidiary, federal court jurisdiction over the [parent] is determined by that corporation's citizenship, not the citizenship of the [subsidiary]. So far as we can determine, every court of appeals that has considered the question has reached this conclusion.") Futaba has not presented facts showing that Keylex "clearly has the right and ability to control WADAC" (*See* Doc. 24 at 12) or any other basis to conclude that

8

the corporate separation should be ignored. Nevertheless "the ownership of [a] subsidiary carrying on local activities in Michigan represents . . . one contact or factor to be considered in assessing the existence or non-existence of the [parent's] requisite minimum contacts with the State . . .." *Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 297 (6th Cir. 1964); *Martin v. S. Indiana Treatment Ctr., Inc.*, No. 3:03CV-428-H, 2004 WL 2595946, at *2 (W.D. Ky. May 27, 2004) (unpublished opinion) (providing that the ownership of a subsidiary located in the forum "is considered one contact in the analysis, but this relationship does not alone decide the personal jurisdiction question.")

Further, the Court cannot ignore Keylex's statement on its website that it has established "business branches" in China and the United States (the latter being WADAC) as a "way[] to expand [its] business globally." (Doc. 24 Ex. PX1.) While this statement may in fact be an "inexact reference" (as Keylex refers to it), when viewed in a light most favorable to Futaba, it suggests that Keylex has engaged in more extensive activities in the forum than have been uncovered at this stage in the litigation and without discovery.

The scale of Keylex's sales, coupled with the presence of its current and former subsidiaries in the forum, bring this case closer to those decisions where the courts found the defendants' sales in the forum sufficient to establish personal jurisdiction, than where jurisdiction was found lacking. *See, e.g., LSI Indus.*, 232 F.3d at 1375 (finding the defendant's "millions of dollars of sales of lighting products in [the forum] over the past

9

several years and its broad distributorship network in Ohio" sufficient to find that the defendant "maintains 'continuous and systematic' contacts with [the forum]"); *Owen v. Illinois Baking Corp.*, 235 F. Supp. 257 (W.D. Mich. 1964) (finding personal jurisdiction based on the volume of business done in the past five years in the forum by defendant, which ranged from approximately $182,000 to $250,000). Keylex cites to cases where courts have found sales representing a smaller percentage of the defendant's business insufficient to establish general jurisdiction; however, a review of the facts of those cases leads this Court to find them distinguishable.

For example, while the Federal Circuit in *Campbell Pet Co. v. Miale* found general jurisdiction lacking where the defendant's total sales in the forum represented 14% of its business, the sales made to forum residents totaled a mere $13,851 over a time span of seven years and there were no sales by the defendant in four of those years. 542 F.3d 879, 881 (Fed. Cir. 2008). In *Velandra*, the defendant made no direct sales in the forum; instead, the defendant's vehicles were imported into the United States by a New York incorporated subsidiary which then transported the vehicles to regional distributors for sales to dealerships. 336 F.2d at 295-296. Any sales of the defendant's products in the forum (Michigan) were made by a regional distributor incorporated in Illinois. (*Id.*) Similarly, the forum sales in *Shea v. Bonutti Research, Inc.* were not made by the defendant directly, but by independent contractor distributorship groups. No. 2:10-cv-615, 2011 WL 53473, at *13 (S.D. Ohio Jan. 7, 2011) (unpublished opinion).

The district court in *Shea* cited six cases in support of its statement that "courts

regularly find that a small percent of sales, such as 3%, is not sufficient to establish general jurisdiction." *Id.* at *14. However, in most of the cases cited, the courts did not make a finding concerning the percentage of *sales* within the forum and/or the facts render them distinguishable from and not persuasive in the present case. *See, e.g., Harris v. Lloyds TSP Bank, PLC*, 281 F. App'x 489, 493 (6th Cir. 2008) (unpublished opinion) (forum residents, who represented 0.000675% of the defendant bank's 16 million account holders, opened accounts with the bank, which was not physically present in the forum); *Davis v. PNGI Charles Town Gaming, LLC*, No. 0702352, 2007 WL 4553695, at *3-4 (E.D. Pa. Dec. 26, 2007) (unpublished opinion) (14-17% of the defendant's slot machine customers who participated in its loyalty program were forum residents who traveled to West Virginia to visit the defendant's casino); *Romann v. Geissenberger Mfg. Corp.*, 865 F. Supp. 255 (E.D. Pa. 1994), abrogated by *Eagle Traffic Control, Inc. v. James Julian, Inc.*, 933 F. Supp. 1251 (E.D. Pa. 1996) (finding no general jurisdiction based on the defendant's doing 2-4% of its *overall* sales in the forum; but not discussing its annual sales, frequency of sales, or the number of transactions); *Wims v. Beach Terrace Motor Inn, Inc.*, 759 F.Supp. 264, 269 (E.D. Pa. 1991) (25-27% of the defendant's guests were forum residents who traveled to the defendant's New Jersey inn); *Simplicity, Inc. v. MTS Prods., Inc.*, No. 05-3008, 2006 WL 924993, at *4 (E.D. Pa. Apr. 6, 2006) (unpublished opinion) (finding 5% figure representing sales in forum inflated and eventually basing its determination that the defendant's contacts with the forum were not "continuous and systematic" on a finding that the defendant imported goods into the forum directly over a

11

*two year* period, only, and that those sales amounted to 1.3% and then .0002% of the defendant's business.)

Thus, the Court concludes that Keylex maintains "continuous and systematic" contacts with Michigan to warrant general personal jurisdiction. As such, the Court is denying Keylex's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and denying as moot Futaba's motion for jurisdictional discovery.

### III. Failure to State a Claim- Applicable Law and Analysis

In its motion to dismiss, Keylex also asserts that Futaba fails to plead facts to support its claim for induced patent infringement in violation of 35 U.S.C. § 271(b). Keylex therefore seeks dismissal of Futaba's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Therefore to survive a Rule 12(b)(6) motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, – , 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to

12

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id*.; *see also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-65).

To succeed on a claim alleging induced infringement, the plaintiff must show "that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006)). "Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Id*. Keylex argues that Futaba's amended complaint fails to allege facts to

suggest that "Keylex actively induced the *importation* of Keylex's fuel inlets into the U.S." (Doc. 19 at 30, emphasis in original.) This Court does not agree.

Futaba alleges that Keylex designs and/or manufactures the alleged infringing fuel inlets "*to be* mounted on vehicle models that are imported, offered for sale, sold and/or used into/in the United States . . ." (Am. Compl. ¶ 11, emphasis added.) Futaba further alleges that Keylex's fuel inlets are imported and sold in the United States for use as spare or replacement parts . . ." (*Id*. ¶ 12.) Futaba alleges that "Keylex knew and knows that its fuel inlets are imported, offered for sale, sold and/or used into/in the United States, at least because Keylex designs its fuel inlets to U.S. regulations, including evaporative emissions regulations, for U.S. model vehicles that Keylex knew are imported into the United States." (*Id*. ¶ 13.) According to Futaba, "in an August 2010 letter to Futaba, Keylex indicates that its fuel inlet design is influenced by U.S. standards regulating the amount of gasoline vapor that is diffused when an automobile is refueled." (*Id*. ¶ 15.)

These allegations, in addition to Futaba's assertion that Keylex is aware of Futaba's '489 Patent, are sufficient to state a viable claim for inducing infringement. If Keylex is aware of Futaba's patent, knows that the manufacturers purchasing its fuel inlets are installing them on vehicles destined for the United States or are offering them for sale in the United States as replacement parts, specifically designs the fuel inlets to conform to U.S. regulations and to be installed on U.S. model vehicles, and continues to sell its fuel inlets to those manufacturers, a reasonable juror could conclude that Keylex induces the manufacturers' direct infringement. Importantly, active inducement may be

14

based on activities occurring outside the United States, if they result in direct infringement within the country. *See Knoll Int'l, Inc. v. Cont'l Imports, Inc.*, 192 U.S.P.Q. 644 (E.D. Pa. 1976) (citing *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 184 U.S.P.Q. 387 (7th 1975)).

For these reasons, the Court is denying Keylex's motion to dismiss pursuant to Rule 12(b)(6).

Accordingly,

**IT IS ORDERED**, that Defendant Keylex Corporation's Second Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction and for Failure to State a Claim is **DENIED**;

**IT IS FURTHER ORDERED**, that Plaintiff Futaba Industrial Company, Limited's Motion in the Alternative for Jurisdictional Discovery is **DENIED AS MOOT**.


Date:  February 9, 2012			s/PATRICK J. DUGGAN
						UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record